[No. F018012. Fifth Dist. June 8, 1993.]

Conservatorship of the Person and Estate of CHARLES COOPER.
LARRY B. POASTER, as Public Guardian, etc., Petitioner and Appellant,
v.
CHARLES COOPER, Objector and Respondent.
[And 10 other cases.]*

---

*Conservatorship of Sabatino* (No. F018019); *Conservatorship of Triplett* (No. F018104); *Conservatorship of Barrious* (No. F018107); *Conservatorship of Green* (No. F018369); *Conservatorship of Willey* (No. F018379); *Estate of Burness* (No. F018498); *Conservatorship of Reinhart* (No. F018501); *Conservatorship of Carr* (No. F018503); *Conservatorship of Griffith* (No. F018504); *Conservatorship of McKinsey* (No. F018549).

## COUNSEL

Michael H. Krausnick, County Counsel, and Harry P. Drabkin, Deputy County Counsel, for Petitioner and Appellant.

Dallas J. Cole, Public Defender, and Gregory L. Spiering, Deputy Public Defender, for Objectors and Respondents.

## OPINION

**FRANSON, J.***—

### STATEMENT OF CASE AND FACTS

This appeal is a consolidation of a number of appeals from the orders of Judge Donald Cantwell settling accounts in conservatorship proceedings. Pursuant to these orders, the public guardian was surcharged in whole or in part for the bond fee which was charged by the public guardian and deposited in the county treasury in the individual estates under Probate Code

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

section 2942, subdivision (c).[1] In disallowing the fees, the judge first held the statute violated the equal protection clause by "selecting a particular class of persons for a species of taxation and no rational basis supports such classification." The court cited *Department of Mental Hygiene* v. *Kirchner* (1960) 60 Cal.2d 716, 722 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], as authority for its rulings. The court later changed its position; it disallowed the bond fees because the public guardian had "not met his fiduciary duty of showing his use of estate assets for his benefit should be approved by the court. The estate is being asked to bear a claimed, general cost of government, without any benefit or value shown to the conservatee's estate."

DISCUSSION

*Is Probate Code Section 2942, Subdivision (c) Constitutional?*

Appellant public guardian contends the trial court erred by disallowing or reducing the bond fees because it acted in clear disregard of the mandate of Probate Code section 2942.

*Constitutionality.*

Respondents point out the first seven guardianship cases were lacking in proof as to the basis for the bond fee claim and argue the court's rejection of the fee was thus justified under the equal protection doctrine. "Without proof and without justification or proof of the claim the court was bound in its role to review and reject such an unproven claim." This argument reflects the trial court's first ruling. The trial court later changed its reasons for denying the bond fees solely relying on the fact the estate was being asked to bear a cost of government that the conservator had not proven to be a cost to the estate. The public guardian asked the trial court to take judicial notice of the copy of his official bond for all guardianship estates, which showed the bond was still set at $20,000 and the fee was $100 per year.[2] Respondents then argue in the alternative the statute is unconstitutional because the bond fee constitutes a tax on the poorest and most poorly situated of citizens.

---

[1]Probate Code section 2942 states in relevant part:

"The public guardian has a claim against the estate of the ward or conservatee for all of the following:

" . . . . . . . . . . . . . . . . . . . . .

"(c) A bond fee in the amount of twenty-five dollars ($25) plus one-fourth of 1 percent of the amount of an estate greater than ten thousand dollars ($10,000). The amount charged shall be deposited in the county treasury. This subdivision does not apply if the conservatee is eligible for Social Security Supplemental Benefits."

[2]Government Code section 27434 states:

"The public guardian shall give an official bond in an amount fixed, from time to time, by the board of supervisors. The bond shall be for the joint benefit of the guardianship or

■ California courts have held a statute should be construed whenever possible so as to preserve its constitutionality. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In *Estate of Getty* (1983) 143 Cal.App.3d 455 [191 Cal.Rptr. 897, 40 A.L.R.4th 1175], the court pointed out that neither the probate court nor the appellate court may freely depart from any "legislative design." (*Id.* at p. 460.) That court set out the rules of statutory construction upon which we rely. ■ When construing a statute, we adhere to the fundamental rule that a court " ' ". . . 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " [Citations.] "An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them." [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citations.]' " (*Id.* at p. 461.)

■ Respondents do not satisfactorily explain how the statute is constitutionally infirm. They summarily state the bond fees, if not tempered by the court's discretion, are manifestly unconstitutional taxes. The only authority cited for this argument is *Department of Mental Hygiene* v. *Kirchner, supra,* 60 Cal.2d 716. *Kirchner* is inapposite. That case involved the attempt of the state to recover the cost of care, support, and maintenance of a woman's mentally ill mother who was committed to a state institution. The court ruled that holding parents, children or a spouse liable for such costs arbitrarily shifted the cost of maintaining a patient at a state institution from the state and the patient's estate to a relative not obligated for the support of the patient. The court determined this to be an invalid class discrimination in violation of equal protection guaranties. That case stands for the proposition that it is unconstitutional to impose liability upon one person for the support of another *not obligated* for her care in a state institution. *Kirchner* does not apply to the problem at issue here.

There is no question in the instant case of a particular person or group being singled out arbitrarily, discriminatorily or without a "rational relationship" to a legitimate government purpose, implicating the statute's constitutionality. (See *Village of Belle Terre* v. *Boraas* (1974) 416 U.S. 1, 8 [39

conservatorship estates and the county. The public guardian may not be required to give a bond in an individual estate."

Probate Code section 2922, subdivision (b), states: "The official bond and oath of the public guardian are in lieu of the guardian or conservator's bond and oath on the grant of letters."

L.Ed.2d 797, 803-804, 94 S.Ct. 1536].) The most indigent citizens (those receiving Social Security benefits) were exempted; thus, it is not true, as respondents allege, that the poorest citizens are required to pay the bond fee.

The Law Revision Commission comments to Probate Code section 2942 are helpful in determining the legislative intent. "The official bond of the public guardian *and the liability of the county* for the public guardian stand in place of the ordinary bond of a guardian or conservator. Since the public guardian's bond and liability are for the benefit and protection of the ward or conservatee and persons interested in the estate of the ward or conservatee, it is proper that these persons, rather than the public should bear the cost.[2] The proposed law allows a bond fee as a claim against the estate of the ward or conservatee.[3] This amount is remitted to the county treasury to offset the public expenditure for the official bond *and other public liability of the county.*" (19 Cal. Law Revision Com. Rep. (Dec. 1987) pp. 711-712, italics added.)

This comment illustrates the Legislature made a considered decision involving policy matters. In enacting Probate Code section 2942, it considered various factors including the expenses of the public guardian and the clerk, the cost of the public guardian's official bond and the county's exposure to potential liability for misdeeds by the public guardian. (See Gov. Code, § 815.2.) Thus, even though the county's cost of "doing business" is disproportionately greater than the cost of the official bond, the Legislature showed a rational basis for allowing the public guardian the $25 (plus ¼ percent) fee in each guardianship estate.

 Before an act or an ordinance will be declared unconstitutional, its unconstitutionality must appear clearly and unmistakably. The legislative power must be upheld unless it is manifestly abused so as to infringe on constitutional guaranties. (*Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 822 [86 Cal.Rptr. 268].) In our view, respondents have failed to show manifest abuse in the statutory scheme for the public guardian's claim for bond fees. As appellant has argued, the statute passes constitutional muster.

*Trial court's discretion.*

 Respondents argue that the trial court correctly exercised its discretion by reducing the bond fee and surcharging the public guardian. However,

---

[2] A guardian or conservator is generally allowed the amount of reasonable expenses incurred in performance of the duties, including the cost of any surety bond given. Prob. Code § 2623(a)."

[3] The bond fee is statutorily defined as $25 plus 1/4% of the amount of an estate greater than $10,000. This is equivalent to one-half the maximum amount allowed for the bond of a personal representative under Probate Code Section 541.5.

The smallest estates—those of persons eligible for Ssocial Security Supplemental Income—are exempt from the bond fee."

in Probate Code section 2942, subdivision (c), the Legislature has not provided for discretion to the trial court for allowing or disallowing the bond fee, in contrast to the preceding subdivisions regarding compensation, where discretion clearly rests in the court to grant reasonable fees. For example, subdivision (a) allows a claim for "*reasonable*" expenses incurred in the execution of the guardianship or conservatorship, and subdivision (b) allows compensation for services of the public guardian and the attorney and for the filing and processing services of the county clerk, "*in the amount the court determines is just and reasonable.*" If the Legislature had intended subdivision (c) of Probate Code section 2942 to be applied in the discretion of the trial court, it surely would have said so, as it had in the preceding subdivisions. It did not.

The trial court attempted below to determine a just and reasonable amount for the public guardian's claim for a bond fee. The court decided in the Burness case that $10 would be an equitable allocation for the cost of business and stated that to try to figure it out beyond that would be too cumbersome to pursue further. The legislative prescription of a flat fee eliminates the problem expressed by the trial court.

We hold, therefore, that the plain language of the statute directs the court to allow the public guardian the bond fee and does not commit the decision to the trial court's discretion. Furthermore, Probate Code section 2942, subdivision (c) admits of no constitutional infirmity.

The judgments are reversed, and the matters are remanded to the trial court to settle the various accounts in accord with the directions of Probate Code section 2942, subdivision (c).

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.